HELEN A. THURSTON, Plaintiff-Appellee, v. JOHN C. THURSTON,
Defendant-Appellant.

Third District No. 3—93—0120

Opinion filed April 19, 1994.

BARRY, J., dissenting.

Parker & Halliday, of Peoria (Ronald E. Halliday, of counsel), for
appellant.

Brandt & Boos, of Peoria (Jack Boos, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Helen A. Thurston, brought a petition to modify the
January 23, 1991, judgment awarding her maintenance entered by
the circuit court of Peoria County. The court entered an order on
November 24, 1992, awarding the plaintiff an increase in mainte-
nance. The defendant, John C. Thurston, then filed a motion to
reconsider which was denied on February 1, 1993.

The defendant appeals, contending that Helen failed to show a
substantial change in circumstances of either party justifying an
increase in maintenance.

Upon dissolution of the marriage of John and Helen, the trial
court entered judgement on January 23, 1991, ordering John to pay
Helen maintenance of $1,400 per month. At that time John worked
for Caterpillar, Inc., and the United States Reserves. The order

contemplated that on September 1, 1991, John's income would decrease as a result of being forced to retire from his position with the United States Reserves and accordingly provided that his maintenance obligation would decrease to $900 per month at that time. John unexpectedly continued his work for the United States Reserves for almost a year longer than anticipated, and continued to pay Helen $1,400-per-month maintenance through July 1992, pursuant to the original order. Helen was receiving $900 per month at the time of the October 15, 1992, hearing on the petition to modify maintenance. The trial court ordered an increase in the maintenance award from $900 to $1,150 per month.

At the October 15, 1992, hearing on the petition to modify maintenance, Helen testified that at the time of the January 23, 1991, judgment, she was earning $6.60 per hour resulting in a net income of $769 per month. She also testified that her expenses were then $2,354 per month. Helen was laid off on April 14, 1991, and remained unemployed until December 27, 1991. She received unemployment compensation of $118 per week beginning April 14, 1991. Helen worked part-time as a sales person earning minimum wage from December 27, 1991, until the end of February 1992. In March of 1992, Helen began a full-time job at Pioneer Park Mitsubishi in Peoria, Illinois. Helen testified that at the time of the October 15, 1992, hearing she earned $5.25 per hour and that she had a net income of $861 per month and expenses of $1,866.86 per month.

John testified that since the January 23, 1991, order he has retired from the military reserves, losing income of approximately $17,000 per year. He received a raise in his gross income from Caterpillar of $224 per month since January 23, 1991, resulting in an increase in his net income of $153.62 per month. John testified that his monthly expenses had increased $107 since the January 23, 1991, order to $4,174 per month. John further testified that he has remarried since January 23, 1991, and that his new wife is a registered nurse who works for two doctors. He and his wife have purchased a house for $149,000 for which his new wife made a down payment of $52,000. John and his new wife have also made $6,000 in home improvements and John has leased an automobile for which he pays $432 per month. John testified that he did not know his new wife's exact income and that she used quite a bit of her income to support her two sons of college age. John denied that his new wife shared any of his $4,174 in monthly expenses.

At the conclusion of the October 15, 1992, hearing, the court ordered that John's maintenance obligation to Helen be increased from $900 to $1,150 per month beginning November 1992. John filed

a motion to reconsider which the court denied on February 12, 1993. In denying the motion to reconsider, the trial court stated that in determining whether there has been a substantial change of circumstance, "it is appropriate that the [c]ourt may consider the remarriage of the Defendant to the extent that the new spouse contributes to the defendant's living expenses and the court specifically finds in this case that Seven Hundred Dollars ($700) of Defendant's monthly expenses are found to be shared."

A reviewing court will not disturb a trial court's modification of a maintenance award absent a clear abuse of discretion. (*In re Marriage of Garelick* (1988), 168 Ill. App. 3d 321, 326, 522 N.E.2d 738, 742.) A court can modify a maintenance award under section 510 of the Illinois Marriage and Dissolution of Marriage Act (the Act) "only upon a showing of a substantial change in circumstances." (750 ILCS 5/510(a) (West 1992).) The party seeking modification of a maintenance award bears the burden of establishing a substantial change in circumstances. (*Garelick*, 168 Ill. App. 3d at 326, 522 N.E.2d at 742.) In deciding whether a maintenance award should be modified, a court should consider the same factors used in making an initial maintenance award. (*In re Marriage of Plotz* (1992), 229 Ill. App. 3d 389, 391, 594 N.E.2d 366, 368.) Under section 504 of the Act such factors include: "(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance; (2) the needs of each party; [and] (3) the present and future earning capacity of each party." 750 ILCS 5/504(a) (West 1992); see also *In re Marriage of Krupp* (1990), 207 Ill. App. 3d 779, 793, 566 N.E.2d 429, 437.

We now address whether the trial court abused its discretion by finding a substantial change in circumstances and ordering a $250-per-month increase in maintenance. In the original judgment, the court did provide for the diminution of payments when the husband's salary as a reserve officer terminated. However, the court made no effort to prophesy or even speculate about the consequence of such reduction and certainly made no finding that the cessation of such payment would be reasonable for both parties.

The reduction in the wife's income is substantial. That the wife reduced her expenses and standard of living to fit her compelled reduction in income does not render such reduction immaterial. It was a significant change in circumstances nowhere considered or contemplated in the original judgment. To compound the problems, the wife was either wholly or partially unemployed during the period prior to this modification proceeding.

The trial court may consider the financial circumstances and

needs of both parties in light of all the facts surrounding both households. (*Garelick*, 168 Ill. App. 3d at 327, 522 N.E.2d at 743.) Related both to the change in circumstances and the propriety of the modification is the increase in the mortgage payment made by the husband. Because the new wife made a substantial downpayment contribution to a new house and because there is no segregation of the mortgage payment, it can be inferred, as the trial court did, that half of the $700 mortgage payment went to the benefit of the husband's new wife.

Additionally, we note the trial court found that $1,492 of the husband's expenses were for the benefit of the husband and his new wife. In this connection, we note that we are primarily concerned with the allocation of the husband's expenses as they affect his ability to contribute to the maintenance of the wife in that regard, not specifically to the income of the new wife.

The modification by the trial court was well within the range of the evidence and did not constitute an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BRESLIN, J., concurs.

JUSTICE BARRY, dissenting:

Helen has the burden of demonstrating a substantial change in the circumstances by showing that John's ability to pay additional maintenance has increased *and* that her needs for maintenance have increased since the original maintenance order. (*In re Marriage of Munford* (1988), 173 Ill. App. 3d 576, 580, 527 N.E.2d 892, 894.) Although the modification of a maintenance award rests within the sound discretion of the trial judge (*Gorman v. Gorman* (1979), 72 Ill. App. 3d 658, 662, 391 N.E.2d 70, 73), the record in this case does not support the trial court's finding of a substantial change in the circumstances. Therefore, I respectfully dissent.

The record indicates that John's net income from Caterpillar increased $153.62 per month and that his monthly expenses increased $107 between the original maintenance order and the October 15, 1992, hearing on the petition to modify. We also note that John's income has decreased by $17,000 since the initial maintenance award and that the trial court originally anticipated this decrease in its initial judgment.

The record further indicates that at the time of Helen's petition

to modify maintenance her net income was approximately $92 per month higher than her income at the time of the original maintenance order, and her monthly expenses had decreased from $2,354 to $1,866.86. According to the record, Helen was unemployed for several months and she received unemployment compensation during the time she was without a job. However, evidence showing fluctuations in her income subsequent to the original divorce judgment but before the petition to modify is irrelevant to the question of current earnings. (*Robin v. Robin* (1977), 45 Ill. App. 3d 365, 371, 359 N.E.2d 809, 814.) Consequently, I find erroneous the majority's conclusion that Helen's income has decreased substantially, when the evidence demonstrates that her income has not decreased whatsoever, but has increased almost $100 per month. In sum, Helen is now employed and earning income comparable to her income at the time of the original maintenance award and her monthly expenses have decreased.

I also note that pursuant to the original maintenance award, Helen received one-half of John's profit-sharing plan at Caterpillar, one-half of his Caterpillar government securities investment and one-half of his Caterpillar and Army Reserves pensions. John additionally pays the amount necessary to maintain Helen's health insurance with Caterpillar and to maintain Helen as a beneficiary of his life insurance.

I also find that the court obviously considered the remarriage of the defendant for the purpose of finding a reduction in the defendant's financial needs. However, the record lacks any evidence whatsoever establishing that John's new spouse shared any of his $4,174 in monthly expenses. Thus, I believe that the trial court erred by deciding that "in this case...Seven Hundred Dollars ($700) of Defendant's monthly expenses are found to be shared." The record contains no evidence reflecting John's new wife's income other than the fact that she is a nurse and that his new wife has two college-aged sons who depend on her for support. In fact, the only other testimony on this subject was John's uncontested statement that his new wife did not contribute to the monthly expenses listed in his affidavit.

The *Garelick* court stated that "[t]he financial status of a divorced party's spouse has no bearing in a proceeding for modification of maintenance or child support." (*In re Marriage of Garelick* (1988), 168 Ill. App. 3d 321, 327, 522 N.E.2d 738, 743.) I believe the rule might be better stated as follows: A trial court may look at the financial status of a party's new spouse only to the extent that the new spouse actually contributes to the expenses claimed by the party

in the maintenance proceeding to determine a party's ability to pay maintenance. Of course, there must be evidence in the record of such contributions. I believe it is improper for a court to assume that a party's new spouse contributes to such expenses based only on the fact that the two are married.

The majority suggests that the trial court and this court can properly infer that "half of the $700 mortgage payment went to the benefit of the husband's new wife." (260 Ill. App. 3d at 734.) However, the new wife paid the entire $52,000 down payment for the $149,000 house, thus reducing the principal owed on the house to $97,000. Has the wife not paid her share of the purchase price for her benefit? I do not agree with the majority's inference. I believe that in light of the testimony, if an inference is to be made, it is that the defendant makes the $700 mortgage payment for *his share* of the home.

It is axiomatic, as the *Garelick* court properly stated, that "a reviewing court will not set aside a modification of a maintenance award unless the trial court clearly abused its discretion." (*Garelick*, 168 Ill. App. 3d at 326, 522 N.E.2d at 743.) In the present case I believe that the trial court clearly abused its discretion by making the unsupported conclusion that some of John's listed expenses were paid by his new wife.

Although a trial court should look at all of the factors considered in making an initial maintenance award when adjudicating a petition for a change of maintenance (*In re Marriage of Plotz* (1992), 229 Ill. App. 3d 389, 391, 594 N.E.2d 366, 368), I find nothing in the record to support the court's finding that Helen has increased needs or that John's ability to pay justifies a $250-per-month increase in maintenance to Helen. Section 510 of the Illinois Marriage and Dissolution of Marriage Act states that "the obligation to pay future maintenance is terminated upon *** the remarriage of the party receiving maintenance." (750 ILCS 5/510(c) (West 1992).) The legislature has made no such rule affirmatively setting forth the public policy regarding the remarriage of the party paying maintenance. Consequently, I believe that the party seeking an increase in maintenance and alleging shared expenses of the paying party has the burden of setting forth some evidence establishing that the paying party's new spouse contributes to that party's expenses, other than the fact that they are married. Helen offered no such evidence in the present case. I read the majority opinion to imply that the remarriage of a party paying maintenance results in a *per se* reduction in that party's expenses and, consequently, an increase in that party's ability to pay maintenance. Had the legislature intended such a presumption, it would have been included in the statute. Here, the trial court made a

finding unsupported by the record that $1,492 of John's expenses were for the benefit of his new wife.

The parties in this case have gone their separate ways, and upon dissolution of the marriage, the trial court granted Helen a reasonable maintenance award. Helen has suffered no sudden illness, loss of resources or incurred increased needs. Parties to such an equitable disposition upon divorce should not be allowed to come back to court seeking modification for insubstantial reasons. My interpretation of the opinions of our courts leads me to conclude that the record in the present case does not establish a "substantial" change in circumstances as contemplated by section 510(a) of the Act.

In light of the foregoing, I would hold that the trial court's finding that there has been a substantial change in circumstances justifying an increase of the original maintenance award in the amount of $250 per month was against the manifest weight of the evidence.